UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| CitiSculpt, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> Advanced Commercial Credit International (ACI) Limited, d/b/a ACI Capital Partners, <br><br> Defendant. | Civil Action No.: 6:17-cv-69-BHH <br><br> **OPINION AND ORDER** |

This matter is before the Court on Defendant Advanced Commercial Credit International (ACI) Limited, doing business as ACI Capital Partners' ("ACI"), Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 10.) The motion is granted without opposition; all causes of action are dismissed without prejudice, and the case is closed.

## BACKGROUND

Plaintiff CitiSculpt ("CitiSculpt") is under contract with the owner of certain real property located in the State of South Carolina, County of Greenville, to purchase said property ("10 S Academy Street"). CitiSculpt and ACI entered into an agreement, entitled "Letter of Interest / Term Sheet," regarding a potential financing arrangement for the real estate purchase (the "Agreement"). (Ex. B, Compl., ECF No. 1-2.) In the Complaint, CitiSculpt alleged that ACI engaged in fraud in the inducement by representing that it was "ready, willing and able to fund . . . $7,770,000.00 in [an] escrow

1

account" to finance the real estate purchase, when in actual fact ACI "knew that it did not possess the monies, but represented it did." (ECF No. 1 ¶¶ 25-35.) CitiSculpt further claimed that ACI engaged in negligent misrepresentation by "falsely represent[ing] that it, or its assigns, would fund the escrow with the $7,770,000.00 loan to [CitiSculpt] on or before December 15, 2016." (*Id.* ¶¶ 36-44.) Finally, CitiSculpt alleged that the Agreement was a contract, and that ACI breached the contract both by failing to fund the escrow account and by acting as a "broker" in that it attempted to find alternate financing sources in contravention of a "Fee Agreement" CitiSculpt maintained with third-party, M&T Realty Capital Corporation, of which ACI had knowledge. (*Id.* ¶¶ 45-51.)

ACI filed its Motion to Dismiss on January 31, 2017. (ECF No. 10.) The deadline for CitiSculpt's response, if any, was February 14, 2017. That date has come and gone without any response from CitiSculpt. Accordingly, this matter is ripe for review on the Motion to Dismiss.

## **LEGAL STANDARD**

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

2

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556)). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff. . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A court should grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

As previously noted, to survive a Rule 12(b)(6) motion to dismiss a complaint must state "a *plausible* claim for relief." *Iqbal*, 556 U.S. at 679 (emphasis added). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a

3

motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).

Federal Rule of Civil Procedure 10 states, "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The Fourth Circuit has recognized the general rule that the "exhibit prevails in the event of a conflict between an attached exhibit and the allegations of a complaint." *See, e.g.*, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (citing *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013).

Local Civil Rule 7.06 states, "If no memorandum in opposition is filed within fourteen (14) days of the date of service, the court will decide the matter on the record and such oral argument as the movant may be permitted to offer, if any."

## DISCUSSION

Because CitiSculpt has not seen fit to respond to ACI's Motion to Dismiss, the Court would say very little by way of analysis. In short, CitiSculpt's allegations center around the formation and supposed breach of the Agreement, but in so doing seem to ignore the express terms of the Agreement.

The negligent misrepresentation claim is dismissed for failure to state a plausible claim for relief. The Agreement contains a choice of law provision indicating that it "shall be governed by Virginia laws." (ECF No. 1-2 at 4.) Negligent misrepresentation claims are generally viewed as a hybrid of tort and contract claims. "South Carolina generally respects choice of law provisions, . . . and appears to recognize that a contract's choice of law provision can extend to tort claims." *Charleston Marine Containers Inc. v.*

4

*Sherwin-Williams Co.*, 165 F. Supp. 3d 457, 468-69 (D.S.C. 2016) (internal citation omitted). CitiSculpt has not challenged the applicability of the choice of law provision, and the Court applies Virginia law accordingly. Virginia law does not recognize an independent cause of action for negligent misrepresentation. *See, e.g.*, *Baker v. Elam*, 883 F. Supp. 2d 576, 581 (E.D. Va. 2012). Therefore, ACI's Motion to Dismiss is granted and the negligent misrepresentation claim is dismissed for failure to state a plausible claim.

CitiSculpt's cause of action for fraudulent inducement also fails to state a plausible claim for relief. "To state a cause of action for fraudulent inducement of contract under Virginia law, a plaintiff must allege that the defendant made misrepresentations that were positive statements of fact, made for the purpose of procuring the contract; that they are untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 452 (E.D. Va. 2009) (citation and internal quotation and alterations omitted).

The Complaint alleges that prior to formation of the Agreement, ACI made certain "representations" about its participation in financing CitiSculpt's purchase of the 10 S Academy Street property, and that CitiSculpt relied on those representations. In general, CitiSculpt's asserts that ACI made an unconditional promise to deposit funds in excess of $7 million into an escrow account by December 15, 2016, in its putative role as "lender" for the property transaction. (*See* ECF No. 1 ¶¶ 9-17, 26, 38.)

The Agreement contains a provision entitled, "Entire Agreement," which reads:

> This Letter of Interest / Term Sheet contains the entire agreement between [CitiSculpt] and ACI concerning the proposed Financing /

> Financing [sic] as of [November 16, 2016]. This Letter of Interest / Term Sheet supersedes all prior agreements, whether written or oral, between the parties respecting such matters, and [CitiSculpt] and ACI acknowledge that there are no contemporaneous oral agreements with respect to the subject matters hereof and thereof. This Letter of Interest / Term Sheet may not be modified, altered or amended, except by an agreement in writing signed by ACI and [CitiSculpt].

(ECF No. 1-2 at 4.) The concluding provisions of the Agreement reiterate these points, stating: "This agreement contains the full and complete understanding of the parties. Any prior writings or verbal agreements of the parties shall be superseded by this in [sic] writing. Any changes to this agreement must be in writing, signed by all parties, and dated subsequent to this writing." (*Id.* at 6.)

Simply put, CitiSculpt's core claim that ACI, through representations occurring prior to the signing of the Agreement, made an unconditional promise to fund the 10 S Academy Street transaction in the amount of $7,770,000 and solidified that promise in the Agreement itself, is untenable. The opening paragraph of the Agreement states that ACI has "conditionally accepted" CitiSculpt's financing request, that the terms expressed in the Agreement "are subject to final underwriting and approval" and "are subject to change until final underwriting," and, most importantly, that the Agreement "is not a commitment to fund." (*Id.* at 1.)

One page 2 of the Agreement, in a paragraph entitled "Other," the terms indicate that if "any adverse or unsatisfactory conditions become evident during the processing of [the] financing, ACI or its assigns may modify the terms contained herein or terminate its interest to purse the Financing." (*Id.* at 2.) On page 3 of the Agreement, in a paragraph entitled "Financing Closing Requirements and Conditions," the terms establish that CitiSculpt's "[f]ailure to submit all information [required] may result in not

enough information to issue a Commitment." (*Id.* at 3.) On the same page, in a paragraph entitled "Financing Document Provisions," the terms establish that "ACI reserves the right to change the Financing Documents as required, in ACI's sole discretion, based on the results of ACI's due diligence." This provision further states that "ACI will not be liable to [CitiSculpt] because of any failure to reach agreement with [CitiSculpt] regarding any provision of the Financing Documents or because ACI, in its sole discretion, elects not to fund the Financing for any reason." Still on page 3, in a paragraph entitled "Conditions to ACI's Obligation to Close," the terms establish that "ACI or its assigns shall not be obligated to make the Financing unless the results of ACI's due diligence and document negotiations with [CitiSculpt] are satisfactory to ACI, in ACI's sole discretion." The final sentence of this paragraph states that "for any other reasons, ACI may at its option and in its sole discretion change the terms of, add new terms and conditions, or cancel this Letter of Interest (LOI)." (*Id.* at 4.)  The Agreement includes further provisions that make any financing subsequently provided by ACI conditional upon the satisfaction of specific requirements, but the Court will not belabor the point. Suffice to say, the plain language of the Agreement makes CitiSculpt's core assertion—that ACI was bound by an unconditional promise to provide certain funding—untenable.

~~CitiSculpt claims that it was fraudulently induced to enter into the Agreement based on ACI's representation that ACI "was ready, willing and able to fund the $7,700,000 in the escrow account." (ECF No. ¶ 26.) However~~,

As detailed above, the Agreement is abundantly clear that its terms constitute the full and complete understanding of the parties. The Agreement does not include the

7

representation that CitiSculpt avers, and by which it was supposedly fraudulently induced. Rather, the Agreement states only that the escrow account would be funded by December 15, 2016, not to mention the fact that the entire financing process was subject to alteration or termination at ACI's sole discretion. When there is a conflict between the allegations in a pleading and exhibits attached thereto, the exhibits control. *See, Goines*, 822 F.3d at 164. Accordingly, CitiSculpt's fraudulent inducement claim falls short of the Rule 8 pleading standard, and is hereby dismissed.

Likewise, CitiSculpt's breach of contract cause of action fails to state a plausible claim for relief. Again, CitiSculpt alleged that ACI breached the Agreement by failing to fund the escrow. As already explained, ACI did not have an unconditional obligation to fund the escrow, and CitiSculpt's averments to the contrary contradict the language of the Agreement itself.

CitiSculpt also alleged that ACI breached the Agreement by "acting as a broker" in an attempt to find alternate funding sources, knowing all the while that a third-party had an exclusive Fee Agreement to act on CitiSculpt's behalf in this regard. Essentially, CitiSculpt has claimed that ACI made "representations" that it would be the sole "lender" for the financing transaction, and should have known it could not act as "broker." However, the Agreement expressly contemplates circumstances in which ACI would consider introducing CitiSculpt to alternative and/or additional funding sources. In a provision entitled "Financing Closing Requirements and Conditions," the Agreement reads: "ACI and/or it's [sic] assigns reserves the right to sell, originate, and/or participate [sic] this Financing with other credit rated investors, which will also require full credit and underwriting approval as a condition of the Financing Closing." (ECF No. 1-2 at 3.)

8

Moreover, the Agreement makes the financing conditional upon and subject to the fulfillment of certain criteria, stating specifically: "[CitiSculpt] acknowledge[s] that the Financing Request for this project is dependent on ACI being able to successfully finalize funds from its investors (defined immediately below)." (*Id.* at 5.) The Court need say no more. The Agreement does nothing to prohibit ACI from acting as a "broker" in procuring financing for this transaction, and it expressly contemplates ACI introducing other entities, called "investors," into the transaction. CitiSculpt has failed to state a plausible claim for breach of contract, and the third cause of action is dismissed accordingly.

## **CONCLUSION**

For the reasons set forth above, ACI's Motion to Dismiss (ECF No. 10) is GRANTED. ACI's corresponding request for reimbursement of attorneys' fees is DENIED. The Complaint is dismissed without prejudice, and the case is closed.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

February 17, 2017
Greenville, South Carolina